CHARLES ETENBURN,       )
                               )
        Petitioner,      )
                               )
    vs.                 )      **Case No. 4:11CV1181RWS/MLM**
                               )
JEFF NORMAL,          )
                               )
        Respondent.    )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Charles Etenburn ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 11. Petitioner filed a Reply to Respondent's Response. Doc. 15. Also before the court is Petitioner's Motion for Stay and Abeyance of His Federal § 2254 Proceedings. Doc. 16. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Doc. 6.

## II.
## BACKGROUND

As stated by the Missouri appellate court:[1]

---

[1]     In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir.

In accordance with a purported comprehensive plea agreement in three different criminal cases, [Petitioner] pleaded guilty to one count of stealing (Phelps County Circuit Court Case No. 25R03062107F–01), in violation of section 570.030, RSMo Cum.Supp.2006; four counts of forgery (Phelps County Circuit Court Case No. 25R03061216F–01), in violation of section 570.090, RSMo Cum.Supp.2003; and one count of possession of a controlled substance (Phelps County Circuit Court Case No. 25R03061030F–01), in violation of section 195.202, RSMo 2000. The attempted consummation of this plea agreement occurred in all three cases simultaneously during one proceeding before the plea court on April 29, 2008. At the plea court's suggestion and with [Petitioner]'s agreement, general issues and questions related to all cases and counts would be addressed collectively, but issues and questions specifically related to a particular case or charge would be addressed separately.

Etenburn v. State, 341 SW3d 737, 738 (Mo. Ct. App. 2011).

After addressing each of the above described three cases, the plea court found a factual basis for Petitioner's guilty plea in each of the cases. See id. "After [Petitioner] waived a sentencing assessment report, the plea court granted allocution and sentenced [Petitioner] 'pursuant to [his] plea agreement [ ]' to ten years in the DOC on each of the four counts, with 'general shock incarceration' in accordance with section 559.115. The sentences on ... four counts were ordered served concurrent with each other and consecutive to the stealing and possession sentences." Id. Pursuant to Petitioner's request, the court granted Petitioner a furlough and ordered that Petitioner appear to serve his "shock sentence" on May 8, 2008. Id. at 742.

As further held by the Missouri appellate court:

[Petitioner] failed to appear as ordered on May 8, 2008. The next day, the plea court issued a capias warrant for his arrest, which was served on May 20, 2008. Two

---

1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

days later, the plea court held a hearing during which the State asked the plea court to "withdraw itself from maintaining the jurisdiction for the first 120 days and simply ask that [Petitioner] be committed and order the previously imposed sentence ordered executed." [Petitioner], in offering his reasons for not appearing as ordered, told the plea court that he "wasn't trying to avoid the 120." Plea counsel requested that [Petitioner] "be given the opportunity to continue on that 120 ... and drug court and get his life back on track." The plea court told [Petitioner] that he had forfeited his right to be considered for probation. Following the hearing, the plea court set aside its prior judgments and entered new judgments identical to the April 29, 2008, judgments except for omitting the provision in each placing [Petitioner] in the shock incarceration program in accordance with section 559.115.

Id. at 742-43.

Petitioner timely filed a post-conviction relief motion pursuant to Rule 24.035. Resp. Ex. B at 98-101. Counsel was appointed and filed an amended motion. Resp. Ex. at 110-23.. Following an evidentiary hearing, the motion court denied Petitioner post-conviction relief. Resp. Ex. B at 124-28. Petitioner then filed an appeal with the Missouri appellate court. Resp. Ex. C. By decision, dated, May 17, 2011, the Missouri appellate court affirmed the decision of the motion court. Etenburn, 341 S.W.3d 737.

On July 5, 2011, Petitioner filed a § 2254 Petition, in which he raises the following Grounds for habeas relief:

**1.** "The sentencing court exceeded its authority in removing its order for sentencing under § 559.115(3) and ordered sentencing under § 559.115(2)";

**2.** The "sentencing court lost jurisdiction once it pronounced sentence and judgment";

**3.** Petitioner's "guilty plea was invalid as the agreement wasn't entered into knowingly, intelligently, or voluntarily"; and

**4.** Trial counsel provided ineffective assistance for failing to inform Petitioner of his right to withdraw his guilty plea when the sentencing court amended the condition or order for Petitioner to appear on time to the sheriff's department.

Doc. 1.

Petitioner also filed a "Motion of Jurisdictional Defect" and a "Request for Leave of Court to Allow Appellant to Supplement or Amend 2254 Petition for Jurisdictional Claim," which Motions the court granted to the extent Petitioner sought to amend his § 2254 Petition. Docs. 9, 10, 12. In the "Motion of Jurisdictional Defect" and a "Request for Leave of Court to Allow Appellant to Supplement or Amend 2254 Petition for Jurisdictional Claim," Petitioner restated Grounds 1-4, as set forth above.

### III.
### EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S.

386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard  for a probability of innocence a

habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

In regard to the exhaustion requirement the Eighth Circuit holds:

> "[I]t is well settled that only after some clear manifestation on the record that a state court will refuse to entertain petitioner's claims will the exhaustion requirement be disregarded as futile." Powell v. Wyrick, 657 F.2d 222, 224 (8th Cir.1981); accord Eaton v. Wyrick, 528 F.2d 477, 482 (8th Cir.1975). The question is usually whether state law provides any presently available state procedure for determining the merits of the petitioner's claim; not whether the state court would decide in favor of the petitioner on the merits. See, e.g., Lindner v. Wyrick, 644 F.2d 724, 727 (8th Cir.), cert. denied, 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981) (return to state court not futile because Missouri rule allows second post-conviction petition if the petitioner can show his claims are based on information not available at the time of the first petition); Thomas v. Wyrick, 622 F.2d 411, 414 (8th Cir.1980) (whether state rule barring claims not raised in direct appeal makes post-conviction remedy presently unavailable is a question of state law).

Snethen v. Nix, 736 F.2d 1241, 1245 (8th Cir. 1984).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

The only issue raised by Petitioner before the Missouri appellate court in the appeal of his post-conviction relief motion was that "the motion court clearly erred in concluding that the plea court had jurisdictional authority to amend the written judgments in his three criminal cases to omit [his] placement in the Department of Corrections ("DOC") shock incarceration program in accordance with § 559.115.3." Etenburn, 342 S.W.2d at 738-39. The court finds, to the extent Petitioner seeks to raise any issue before this court other than the issue which he raised before the

Missouri appellate court, that Petitioner has procedurally defaulted such issues. In the interest of justice, to the extent that Petitioner raises in Grounds 1 and 2 the issue he raised before the Missouri appellate court, the court finds that he did not procedurally default those aspects of Grounds 1 and 2. The court further finds that Petitioner has procedurally defaulted Grounds 3 and 4 and any other issues which he intends to raise before this court other than the issue which he raised before the Missouri appellate court.

To the extent Petitioner argues in his pending Motion that his "Post-Conviction Counsel failed to develop[] the factual and legal basis" of his defaulted claims, the court will consider this as Petitioner's argument that his procedural default of Grounds 3 and 4 and any other issues which he did not raise before the Missouri appellate court should be excused. Doc. 16 at 2. A habeas petitioner has no right to effective assistance of counsel in state court post-conviction relief proceedings. See Pennsylvania v. Finely, 481 U.S. 551, 557 (1987); Oxford v. Delo, 59 F.3d 741, 748 (8th Cir. 1995); Lowe-Bey v. Groose, 28 F.3d 816, 820 (8th Cir. 1994) (citing Coleman v. Thompson, 501 U.S. 722, 752-55 (1961)). Because post-conviction proceedings are civil in nature, the Sixth Amendment right to effective assistance of counsel does not apply to state post-conviction proceedings. See Williams v. State of Missouri, 640 F.2d 140, 144 (8th Cir 1981) (citing Noble v. Sigler, 351 F.2d 673, 678 (8th Cir. 1965)). "Accordingly, ineffective assistance of post-conviction counsel cannot be imputed to the state and cannot constitute the cause and prejudice necessary to excuse a procedural default." Nave v. Delo, 62 F.3d 1024, 1033-34 (8th Cir. 1995) (citing Coleman, 501 U.S. at 751-55). As such, the court finds that Petitioner has not stated cause and prejudice to excuse his default of Grounds 3 or 4 or of any other issues which he intends to raise before this court which he did not raise before the Missouri appellate court; that he has procedurally defaulted such Grounds for habeas relief; and that habeas relief on the basis of Grounds 3 and 4 and any other issues which Petitioner intends to

raise before this court which he did not raise before the Missouri appellate court should be denied.

2    The court will consider, pursuant to Petitioner's § 2254 Petition, only the issue which he raised before the Missouri appellate court to the extent such issue is raised in Grounds 1 and 2.

## III.
## PETITIONER'S MOTION FOR STAY AND ABEYANCE OF HIS FEDERAL § 2254 PROCEEDINGS

In his pending Motion Petitioner states that his § 2254 Petition alleged four claims; that his Amended Petition included two additional claims; and that, in the event, the court finds that he has procedurally defaulted his claims, he requests that the court grant him a "limited stay-and-abeyance to allow for the development of meritorious claims in State Court." Doc. 16 at 2. The court has noted above that Petitioner's proposed amended claims do not differ from the claims made in his original § 2254 Petition and that the court would assume, in the interest of justice, that Petitioner's Grounds 1 and 2 encompass the issue Petitioner raised before the Missouri appellate court. Further, the court has found above that Petitioner has procedurally defaulted Grounds 3 and 4 and any other issues he intends to raise before this court other than the issue he raised before the Missouri appellate

_____

2        In regard to the merits of Ground 3, the court notes that the transcript of Petitioner's plea hearing reflects that his guilty plea was made knowingly and wilfully and that Petitioner understood the terms of his temporary release. See Resp. Ex. B at 41-51; Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). See also pages 28-29, infra. In regard to Petitioner's claim of ineffective assistance of counsel in Ground 4, Petitioner must show both that counsel's performance was unreasonable and that he was prejudiced by counsel's performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner argues that the conditions of his release were additional terms and that his trial counsel should have advised him of his right to withdraw his plea. The record reflects that Petitioner testified before the sentencing court that he understood that, if he did not report back after being allowed time to take care of another case, he would not receive 120 days general shock incarceration and possible eligibility for the drug court program, but that he would received 30 years incarceration. Resp. Ex. B at 51-52. As such, Petitioner cannot establish that he was prejudiced by counsel's alleged ineffectiveness. Thus, were the court to consider Petitioner's Grounds 3 and 4 on their merits, the court would find them meritless. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review.").

court and that he has not stated cause and prejudice to excuse his procedural default of these Grounds for habeas relief.

"'[S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court,' ⋯ and even showing good cause, 'the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.'" Akins v. Kenney, 410 F.3d 451, 455 (8th Cir. 2005) (citing Rhines v. Weber, 125 S.Ct. 1528, 1535 (2005)). A stay should not be granted by the district court where a "'petitioner engages in abusive litigation tactics or intentional delay.'" Id. (quoting Rhines, 125 S.Ct. at 1535). It is within a district court's discretion to determine whether it should stay § 2254 habeas proceedings. Akins, 410 F.3d at 456. Petitioner has not suggested cause to excuse his failure to exhaust his State remedies. As such, the court finds that Petitioner's Motion for Stay and Abeyance of his Federal § 2254 Proceedings should be denied. See Akins, 410 F.3d at 455.

## IV.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably.

Id. at 783 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)).  Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784.  "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1).  Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)).  See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams, 529 U.S. 362, the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. <u>Brown v. Luebbers</u>, 371 F.3d 458 (8th Cir. 2004). The court held in <u>Brown</u> that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. <u>Coleman v. Thompson</u>, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

<u>Id.</u> at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." <u>Id.</u> at 462 (citing <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir.1999)).   The court further held in <u>Brown</u> that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

<u>Id.</u>

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## IV.
## DISCUSSION

The issue raised by Petitioner before the Missouri appellate court was whether "the motion court [] erred in concluding that the plea court had jurisdictional authority to amend the written judgments in [Petitioner's] three criminal cases to omit [Petitioner's] placement in the [DOC] shock incarceration program in accordance with § 559.115.3." [3]

---

[3]     Mo. Rev. Stat. § 559.115 provides, in relevant part:

2. Unless otherwise prohibited by subsection 5 of this section, a circuit court only upon its own motion and not that of the state or the offender shall have the power to grant probation to an offender anytime up to one hundred twenty days after such offender has been delivered to the department of corrections but not thereafter. The court may request information and a recommendation from the department concerning the offender and such offender's behavior during the period of incarceration. Except as provided in this section, the court may place the offender on probation in a program created pursuant to section 217.777, RSMo, or may place the offender on probation with any other conditions authorized by law.

3. The court may recommend placement of an offender in a department of corrections one hundred twenty-day program. Upon the recommendation of the court, the department of corrections shall determine the offender's eligibility for the program, the nature, intensity, and duration of any offender's participation in a program and the availability of space for an offender in any program. When the court recommends and

As set forth above, at Petitioner's plea hearing, the court addressed general issues related to all three of Petitioner's individual cases in which he was pleading guilty and then addressed issues and question specifically related to each of these three cases. In this regard, the Missouri appellate court held that, upon addressing Petitioner's individual cases:

> The plea court heard testimony from [Petitioner] as to the range of punishment and the factual basis for [Petitioner's first case, charging him with possession of a controlled substance]. After finding that a factual basis existed for the charge, the plea court asked the prosecutor to state the plea agreement for the record. In response, the prosecutor stated:
>
>> ... Upon a successful plea of guilty, the State has promised to recommend in this case that the [Petitioner] will be sentenced to the Missouri Department of Corrections for a period of ten years under 559.115 general shock, but that that sentence will be run consecutively with the other two cases that we are going to hear in a few moments.

_____

receives placement of an offender in a department of corrections one hundred twenty-day program, the offender shall be released on probation if the department of corrections determines that the offender has successfully completed the program except as follows. Upon successful completion of a treatment program, the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. The court shall release the offender unless such release constitutes an abuse of discretion. If the court determined that there is an abuse of discretion, the court may order the execution of the offender's sentence only after conducting a hearing on the matter within ninety to one hundred twenty days of the offender's sentence. If the court does not respond when an offender successfully completes the program, the offender shall be released on probation. Upon successful completion of a shock incarceration program, the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. The court shall follow the recommendation of the department unless the court determines that probation is not appropriate. If the court determines that probation is not appropriate, the court may order the execution of the offender's sentence only after conducting a hearing on the matter within ninety to one hundred twenty days of the offender's sentence. If the department determines that an offender is not successful in a program, then after one hundred days of incarceration the circuit court shall receive from the department of corrections a report on the offender's participation in the program and department recommendations for terms and conditions of an offender's probation. The court shall then release the offender on probation or order the offender to remain in the department to serve the sentence imposed.

...

In addition, Your Honor, upon-if the [Petitioner] is discharged within the first 120 days, that the [Petitioner] will be tested for entry into the Phelps County drug court program. And if he is deemed to be a candidate for drug court, that [] would be a condition of any probation that he would receive after the first 120 days.

Upon inquiry by the plea court, both [Petitioner] and his plea counsel acknowledged that this was their understanding of the plea agreement. In response to his plea counsel's questions, [Petitioner] acknowledged that he understood that he would "be going to the Department of Corrections for 120–day general shock" and that "at the end of that 120 days, it's up to the Judge whether or not [he was] let out of that 120–day shock."

The plea court next addressed the stealing charge by inquiring of [Petitioner] about the applicable range of punishment and the factual basis for his plea on that charge. In response to questions from plea counsel, [Petitioner] indicated that he understood "that the recommendation from the prosecutor is essentially the same as the first case that we did, that you will still have to do drug court upon your release from the 120[-day shock]" and "then it's up to the Judge that you be released at the end of the 120[-day shock][.]" When asked by the plea court, the prosecutor stated, "And the recommendation, again, is ten years in the DOC under 559.115 general shock[,]" with the same drug court provision should [Petitioner] be released on probation after 120 days. Upon inquiry by the plea court, both [Petitioner] and his plea counsel acknowledged that this was their understanding of the plea agreement.

Next, the plea court addressed the third case that involved the four counts of forgery. The plea court inquired of [Petitioner] as to the range of punishment and the factual basis for each count. In response to plea counsel's questions, [Petitioner] understood that he would be "sentenced under 559.115 for a 120 general shock in the Missouri Department of Corrections" and that "it's up to the Judge whether or not you are let out at the end of that 120 days."

Returning to the stealing case, the plea court made a finding that a factual basis for the plea of guilty existed and adjudged [Petitioner] guilty of that offense. In response to the plea court's inquiry, [Petitioner] waived a sentencing assessment report. The plea court granted allocution and sentenced [Petitioner] to ten years in the DOC and to "general shock incarceration" in accordance with section 559.115.

After pronouncing the sentence in the stealing case, the following colloquy occurred:

> THE COURT:.... Now, is there anything that I have overlooked in this sentencing?
>
> [Prosecutor]: Yes, Your Honor, there is one thing and that is that they are consecutive. You haven't addressed that yet.
>
> THE COURT: Well, I haven't gotten to it—the second one yet.
>
> [Prosecutor]: I understand.
>
> THE COURT: Okay. I will—I will get that, but I'm not there yet. I can't make it consecutive when I haven't sentenced him on anything else yet.
>
> [Prosecutor]: I understand.
>
> THE COURT: But thank you. I appreciate you pointing all of these things out....
>
> [Petitioner's Plea Counsel]: Your Honor, there is—if I may, there's one matter. We spoke in Chambers about [Petitioner] being allowed some time before he reports for the 120–day shock incarceration so that he can talk with an attorney out of another county and—and try to get some affairs in order.
>
> THE COURT: All right. And I'll consider that. Let me get-
>
> [Plea Counsel]: Okay.
>
> THE COURT:—to the bottom of this first, okay?
> I'm trying to work one way to another.
> All right. Sir, I will—I'm—I will be telling you about Rule 24.035. I'm gonna do that at the end of all these cases.
>
> [[Petitioner]]: Okay.
>
> THE COURT: Okay. So at this point, I'm simply—and I'll be inquiring as to assistance of counsel at the end of all the cases. So I'm gonna move on into the sentencing on that, instead of inquiring on each individual case, okay? All right. Any questions about that, sir?
>
> [Petitioner]: No, Your Honor.

The plea court then returned to the possession case, found that a factual basis existed for [Petitioner]'s plea, and adjudged [Petitioner] guilty of that offense. After [Petitioner] waived a sentencing assessment report, the plea court granted allocution and sentenced [Petitioner] "pursuant to the requested plea agreement in this matter[]" to serve ten years in the DOC and ordered that he be committed under section 559.115 for "general shock incarceration." This sentence was ordered served consecutive to the stealing sentence.

The plea court then found that a factual basis existed for [Petitioner]'s plea on each of the four counts in the forgery case and found [Petitioner] guilty on each count. After [Petitioner] waived a sentencing assessment report, the plea court granted allocution and sentenced [Petitioner] "pursuant to [his] plea agreement [ ]" to ten years in the DOC on each of the four counts, with "general shock incarceration" in accordance with section 559.115. The sentences on each of these four counts were ordered served concurrent with each other and consecutive to the stealing and possession sentences.

After announcing, "Now, I think on the sentencing, that I am now complete [,]" the plea court turned to [Petitioner]'s request for a furlough before reporting to the county jail for transport to DOC. The following colloquy then occurred:

THE COURT:.... Now, there has been a request, and your attorney referred to it at the beginning, that you be allowed some time. Apparently you have other cases, sir?

[Petitioner]: Yeah, I have one.

...

THE COURT: Now, sir, what guarantee do I have that you will report back to this Court to go down to the penitentiary?

[Petitioner]: I can tell you, Your Honor, that I will appear. I have 30 years of my life hanging over my head right now.

THE COURT: All right. You understand that if you don't show up—

[Petitioner]: I sure do.

THE COURT:—that you won't get second chances, and you won't be going down for 120, but it'll be—

[Petitioner]: 30 years.

THE COURT:—30 years?

[Petitioner]: I fully understand that.

THE COURT: All right. Then, sir, what I'm going to do, in order to give you a little bit of time—and I very seldom do this, sir, so please don't prove me wrong, because it'll mean that nobody after you will get this opportunity.

[Petitioner]: You're the one who's got to call me back on the 120.

THE COURT: Well, that and—and many other things, okay?

[Petitioner]: Exactly.

THE COURT: All right. Then, sir, what I'm going to do is I'm going to give you until May the 8th.

[Petitioner]: Okay.

THE COURT: And you are—that's a Thursday. Not this Thursday. Thursday a week from now.

[Petitioner]: Yes, ma'am.

THE COURT: And you are to report back to the Phelps County Sheriff's Department ... at 5 p.m. on May the 8th.

[Petitioner]: I'll be here.

THE COURT: Now, if for some reason you behave badly in the meantime, sir, you'll be picked up, and all that gets laid to waste. Do you understand that?

[Petitioner]: Yes, Your Honor, I do.

THE COURT: All right. That's just a heads up, sir. I don't do this normally.

[Petitioner]: Yes, ma'am.

THE COURT: I mean, I think they'll tell you I don't normally do this. I'm giving you the opportunity. If you can get this resolved with your attorney, straighten out whatever matters in your life you need to get done, but you report at five o'clock.

[Petitioner]: Yes, ma'am.

THE COURT: Any questions about that?

[Petitioner]: No, ma'am. Thank you.

THE COURT: You're welcome, sir.

The plea court advised [Petitioner] of his rights under Rule 24.035 and inquired of [Petitioner] as to the assistance of his plea counsel. The plea court then inquired, "Now, is there anything that I have overlooked regarding the sentencing today?" Other than some questions by [Petitioner] regarding court costs, no one indicated that anything had been overlooked. Before the proceedings concluded, however, the plea court again advised [Petitioner] that he was being given an opportunity to take care of other matters and that he needed to report to the jail at 5:00 p.m. on May 8.

Stipulated typewritten docket entries dated April 29, 2008, and signed by [Petitioner], plea counsel, the prosecuting attorney, and the plea court were filed in each case. Each docket entry recites, in pertinent part, that

> .... The Court finds that ... [Petitioner] has freely and voluntarily, in open Court pleaded guilty to the charge and signed a petition to enter a plea of guilty with the full knowledge and understanding of the contents thereof; that the plea is not the result of force or threats or of promises, apart from the plea agreement filed herein; that [Petitioner's] willingness to plead guilty does not result from prior discussions between the Prosecuting Attorney and [Petitioner] or [Petitioner's] attorney, except as reflected in the plea agreement filed herein.... [Petitioner] signs and files petition to enter plea of guilty.

> In addition to reflecting a ten-year sentence in each case, each docket entry stated "[[Petitioner]] committed under Section 559.115 RSMo for general shock incarceration" and

> If [Petitioner] is released during the first 120 days of his sentence, [[Petitioner]] must evaluated [sic] for his inclusion in the Phelps County Drug Court, and if he is determined eligible by the drug court, a condition of his probation shall be that he successfully complete the Drug Court Program.

Although each docket entry referred to a "plea agreement filed herein," nothing in the legal file on appeal reflects such a filing. None of the docket entries mention[s] anything about a furlough or any consequences to be imposed for violation

of a furlough, except for a handwritten notation, apparently written and initialed by the plea court, on the bottom of the docket entry in the possession case stating "[Petitioner] ordered to appear for commitment on May 8, 2008 @ 5 P.M. @ Phelps County Jail."

Also on April 29, 2008, the plea court executed written judgments in each case sentencing [Petitioner] to consecutive ten-year terms of incarceration in the DOC, committing [Petitioner] to the shock incarceration program under section 559.115, and ordering [Petitioner] to appear at the jail for commitment on May 8, 2008, at 5:00 p.m.

[Petitioner] failed to appear as ordered on May 8, 2008. The next day, the plea court issued a capias warrant for his arrest, which was served on May 20, 2008. Two days later, the plea court held a hearing during which the State asked the plea court to "withdraw itself from maintaining the jurisdiction for the first 120 days and simply ask that [[Petitioner]] be committed and order the previously imposed sentence ordered executed." [Petitioner], in offering his reasons for not appearing as ordered, told the plea court that he "wasn't trying to avoid the 120." Plea counsel requested that [Petitioner] "be given the opportunity to continue on that 120 ... and drug court and get his life back on track." The plea court told [Petitioner] that he had forfeited his right to be considered for probation. Following the hearing, the plea court set aside its prior judgments and entered new judgments identical to the April 29, 2008, judgments except for omitting the provision in each placing [Petitioner] in the shock incarceration program in accordance with section 559.115.

Etenburn, 341 S.W.3d at 739-43.

The Missouri appellate court further considered that, on appeal, Petitioner argued that: the plea court did not have the authority or jurisdiction to amend the judgment and sentence imposed on May 22, 2008; that the plea agreement "fixed his punishment at a total of 30 years in prison, but with the negotiated provision that [Petitioner] was also committed to the 120-day Shock Incarceration Program under § 559.115"; and that "the unauthorized amendment deleting the commitment to the 120-day shock incarceration program rendered [his] 'guilty pleas involuntary, unknowing, and unintelligent, in violation of his [Petitioner's] right ... to due process of law[.]" Id. at 744. The Missouri appellate court also noted that Petitioner argued in his reply brief that he was prejudiced by the court's actions because he was denied the opportunity for probation by successfully completing

the shock incarceration program pursuant to which he would be released after 120 days if he successfully completed the program. Id. at 744-45.

After considering the above facts and background, the Missouri appellate court held:

[Petitioner's] argument has no merit because [Petitioner] was not assigned to the shock incarceration program in the first instance. This is so because the provisions in the original written judgments in each case assigning him to that program varied materially from the plea court's oral pronouncements of sentence in each case.

"Generally, the written sentence and judgment should reflect the trial court's oral pronouncement of sentence before the defendant." Rupert v. State, 250 S.W.3d 442, 448 (Mo. App. 2008) (citing State v. Patterson, 959 S.W.2d 940, 941 (Mo. App. 1998)). Here, in pronouncing sentence in each case, the plea court sentenced [Petitioner] to ten years in the DOC and to "general shock incarceration" in accordance with section 559.115. []. These pronouncements, considered on their face in isolation from the rest of the record, are ambiguous because they could refer to the plea court's discretionary power to place a defendant on probation during the first 120 days following delivery to the DOC, as provided by section 559.115.2, or they could refer to the placement of [Petitioner] in the DOC's shock incarceration program under section 559.115.3. Where a pronouncement of sentence is ambiguous, an appellate court may examine "'the entire record to determine if the oral sentence can be unambiguously ascertained.'" State ex rel. Zinna v. Steele, 301 S.W.3d 510, 514 (Mo. banc 2010) (quoting Johnson v. State, 938 S.W.2d 264, 265 (Mo. banc 1997)). An examination of the entire record here clarifies any ambiguity in the oral pronouncements.

The State announced the plea agreement on the record during the plea proceeding as calling for [Petitioner] to be "sentenced to the Missouri Department of Corrections for a period of ten years under 559.115 general shock." []. [Petitioner] and his plea counsel acknowledged in each case that this was their understanding of the plea agreement. In response to plea counsel's questions, [Petitioner] further acknowledged that he understood he would "be going to the Department of Corrections for 120–day general shock " and that "at the end of that 120 days, it's up to the Judge whether or not [he was] let out of that 120–day shock." []. The stipulated docket entries signed by all, including [Petitioner] and the plea court, ordered "[Petitioner] committed under Section 559.115 RSMo for *general shock incarceration*." []. After the oral pronouncement of sentence in all three cases, [Petitioner] acknowledged to the plea court during his request for a furlough that "[y]ou're the one who's got to call me back on the 120." There was no mention during the entire plea proceeding of [Petitioner]'s placement in the shock incarceration program or the concomitant involvement of the board of probation and parole in a probation decision as provided under section 559.115.3. Thus, the record is clear and unambiguous. The plea court's pronouncement of sentence in each case to include "general shock incarceration" was referring to the power reserved to its

23

discretion by section 559.115.2 to place [Petitioner] on probation within 120 days of his delivery to DOC and to request a report or recommendation from DOC for that purpose.

Therefore, the original written judgments committing [Petitioner] to the shock incarceration program deviated from the oral pronouncement of sentence made by the plea court in [Petitioner]'s presence in each case. See Rupert, 250 S.W.3d at 448. This was a material deviation because it changed [Petitioner]'s possible grant of probation from within the discretion of the plea court under section 559.115.2, in accordance with the oral pronouncement of sentence implementing the plea agreement, to within the discretion of the board of probation and parole under section 559.115.3, as pointed out by [Petitioner] supra.

A criminal "'judgment derives its force from the rendition of the court's judicial act and not from the ministerial act of its entry upon the record.'" Patterson, 959 S.W.2d at 941 (quoting State v. Williams, 797 S.W.2d 734, 738 (Mo. App. 1990)). "When the two are in conflict, the oral sentence controls, and the written judgment is erroneous." Patterson, 959 S.W.2d at 941. Thus, [Petitioner]'s argument, based upon his assignment to the shock incarceration program in the erroneous original written judgments, fails to support his claim that the motion court's lack-of-prejudice finding is clearly erroneous.

In the absence of any proven prejudice to [Petitioner] as a result of the entry of the amended judgments, [Petitioner] is not entitled to any relief on his claim. See Dean v. State, 950 S.W.2d 873, 876 (Mo. App.1997). Thus, any opinion as to the plea court's authority to enter them would be advisory and is unnecessary and inappropriate. See State v. Oakes, 84 S.W.3d 562, 564 (Mo. App. 2002) (appellate courts do not render advisory opinions nor decide nonexistent issues). [Petitioner]'s point is denied, and the motion court's denial of [Petitioner]'s motion for post-conviction relief is affirmed.

Nevertheless, when it is determined in a post-conviction relief case that a written sentence differs materially from the oral pronouncement of sentence, "[a] limited remand is necessary for the trial court to correct the written judgment to reflect the oral pronouncement of sentence." Hall v. State, 190 S.W.3d 533, 535 (Mo. App. 2006); Samuel v. State, 156 S.W.3d 482, 484 (Mo. App. 2005); Rule 24.035(j) (motion court may "correct the judgment and sentence as appropriate"). Therefore, while we affirm the motion court's denial of [Petitioner]'s motion for post-conviction relief, we remand the case for the limited purpose to direct the motion court to correct the original written judgment in each of [Petitioner]'s three underlying criminal cases to accurately reflect the oral pronouncement of sentence in each. See Hall, 190 S.W.3d at 535.

Etenburn, 341 S.W.3d at 745-47 (emphasis in original).

First, the issue raised by Petitioner hinges on the differences between Mo. Rev. Stat. §559.115.2 and Mo. Rev. Stat. §559.115.3. The Missouri appellate court based its decision on its interpretation of these two statutory provisions and on the record of Petitioner's plea hearing and concluded that Petitioner was sentenced under §559.115.2, which gives sole discretion as to whether a defendant receives probation to the court. Likewise, as set forth above, the appellate court relied on its interpretation of State law upon addressing Petitioner's argument that the plea court lacked the jurisdiction to enter an amended judgment. Issues concerning the interpretation and application of State law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." In the instant case, Petitioner does not assert a constitutional violation, but merely requires this court to interpret and apply Mo. Rev. Stat. §§559.115.2 and 559.115.3. As such, Petitioner's claim is not cognizable under § 2254.

Moreover, to the extent the Missouri appellate court rested its decision on factual findings as to what transpired at Petitioner's plea hearing, in proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. §2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also n.1, above. Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120, (1983). In any case, Petitioner suggests no facts, nor does the record reflect facts, which suggest that Petitioner's plea was conditioned on his being considered for probation pursuant to §559.115.3. Significantly, as stated by the Missouri appellate court, Petitioner testified that he understood that it was *the plea court's responsibility to "call [him] back on the 120.*" Etenburn, 341 S.W. at 746 (emphasis added). Further, as considered by the Missouri appellate court, the record does not mention the involvement of the Board of Probation and Parole in a probation decision, as would be necessary under §559.115.3. See id.

Additionally, to the extent the issue raised by Petitioner before the Missouri appellate court and before this court suggests that his plea hearing was constitutionally inadequate and that his plea was not voluntary because the plea court failed to specify the subsection of § 559.115 under which he was being sentenced, federal law requires that:

> [T]he sentencing judge must develop, on the record, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge. The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. (citations omitted)...

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.

Santobello v. New York, 404 U.S. 257, 261-62 (1971).

Additionally, the Supreme Court has held that:

> A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. (citation omitted). Admissibility of a confession must be based on a "reliable determination on the voluntariness issue which satisfied the constitutional rights of the defendant." Jackson v. Denno, 378 U.S. 368, 387, 84 S.Ct. 1774, 1786, 13 L.Ed.2d 908. ... .

> ... Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934.

Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).

Thus, according to the United States Supreme Court, a record must disclose that a criminal defendant voluntarily and understandingly entered his plea of guilty. See id. at 244. "Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." Id. at 243 n.5 (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969) (internal citation omitted)). "'Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.'" Id. quoting McCarthy, 394 U.S. at 466 (internal citation omitted)). While the "record must affirmatively show, under the totality of the circumstances, that [a] plea of guilty was voluntary, and [while] it is the duty of the judge to establish by inquiry as thorough as the circumstances demand its constitutional validity, ... the failure of the state court to make a record affirmatively showing the voluntariness of a plea of guilty in accordance with the precepts of Boykin does not automatically vacate the plea." Griffith v. Wyrick, 527 F.2d 109, 112 (8th Cir. 1975). As stated by the Eighth Circuit, "[t]he state may still show, by way of post-conviction proceedings, that the plea was voluntarily made." Id.

The record of Petitioner's guilty plea proceedings establishes that Petitioner understood the nature of the charges to which he was pleading guilty and that Petitioner testified that he engaged in the conduct with which he was charged and to which he was pleading guilty. In regard to the plea agreement, that the prosecutor stated that he would recommend that Petitioner be sentenced to ten years for each of the three charges against him, which sentences would run consecutive to one another; he would recommend that Petitioner be sentenced pursuant § 559.115 "under general shock"; and that, pursuant to § 559.115, if Petitioner were deemed to be a candidate for drug court, that would be a condition of any probation he would receive after serving 120 days. Petitioner testified that what the prosecutor said was his understanding of the plea agreement. Petitioner specifically testified that he understood that, pursuant to the plea agreement, he would be going to the DOC for 120 days general shock and that after he served these 120 days it was up to the judge to determine if he was to be "let out." Resp. Ex. B at 43-51. Thus, the record reflects that Petitioner entered his guilty plea voluntarily and knowingly, including that he understood the sentence which he would receive if he plead guilty. Indeed, the record does not reflect that Petitioner's being granted a furlough was part of his sentence. See Santobello, 404 U.S. at 261-62; Boykin, 395 U.S. at 242-43. Santobello v. New York, 404 U.S. at 261-62. Thus, to the extent that the Missouri appellate court did not address the constitutionality of Petitioner's guilty plea and to the extent such an issue is properly before this court, the court finds, alternatively, that Petitioner has not demonstrated that his guilty plea was constitutionally inadequate. See Robinson, 278 F.3d at 865-66. To the extent the Missouri appellate court did address the constitutionality of Petitioner's guilty plea, the court finds, alternatively, that its decision is not contrary to federal law and that it is a reasonable interpretation of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts

of Petitioner's case. See Williams, 529 U.S. at 412-13. As such, the court finds that Petitioner is not entitled to habeas relief based on his § 2254 Petition.

<strong>IV.<br>CONCLUSION</strong>

The court finds that Petitioner's Motion for Stay and Abeyance of His Federal § 2254 Petition should be denied. The court further finds that Petitioner procedurally defaulted Grounds 3 and 4; that to the extent Petitioner intends to raise issues other than the issue he raised before the Missouri appellate court, Petitioner has procedurally defaulted such issues; that Petitioner did not procedurally default those aspects of Grounds 1 and 2 which he raised before the Missouri appellate court; that, to the extent Petitioner raised the issues of Grounds 1 and 2 before the Missouri appellate court, Grounds 1 and 2 are not cognizable pursuant to § 2254; and that, alternatively, to the extent Petitioner raised the issues of Grounds 1 and 2 before the Missouri appellate court, Grounds 1 and 2 are without merit. The court finds, therefore, that Petitioner's § 2254 Petition should be denied in its entirety. The undersigned further finds that the issue asserted by Petitioner does not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Motion for Stay and Abeyance of His Federal § 2254 Proceedings filed by Petitioner be **DENIED**; Doc. 16

**IT IS FURTHER RECOMMENDED** that the § 2254 Petition filed by Petitioner be **DENIED** and **DISMISSED**, with prejudice. Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**.

The parties are advised that Petitioner has fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 10th day of February, 2012.